**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

|                        |       |                        |
|------------------------|-------|------------------------|
| COURTNEY MEANS,        | ⦚     |                        |
|                        | ⦚     |                        |
|     Petitioner, | ⦚     |                        |
|                        | ⦚     |                        |
| v.                     | ⦚     | No. 11-2646-JPM-tmp     |
|                        | ⦚     |                        |
| JERRY LESTER,          | ⦚     |                        |
|                        | ⦚     |                        |
|     Respondent. | ⦚     |                        |
|                        | ⦚     |                        |

---

**ORDER ON PENDING MOTIONS**
**ORDER GRANTING IN PART AND DENYING IN PART**
**PETITION PURSUANT TO 28 U.S.C. § 2254**
**AND**
**ORDER ISSUING CONDITIONAL WRIT OF HABEAS CORPUS**

---

Before the Court are the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "§ 2254 Petition") filed by Petitioner Courtney Means, Tennessee Department of Correction prisoner number 375663, who is currently an inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee (ECF No. 1),[1] Petitioner's Motion for Summary Judgment (ECF No. 19), Respondent's Motion to Construe Answer as Motion for Summary Judgment (ECF No. 22), and Petitioner's [Second] Motion for Summary Judgment (ECF No. 25). For the following reasons, the Motions for Summary Judgment are DENIED, the § 2254 Petition is

---

[1] The Clerk is directed to substitute WTSP Warden Jerry Lester for Henry Steward as Respondent in this action. See Fed. R. Civ. P. 25(d).

GRANTED IN PART and DENIED IN PART, and the Court ISSUES a conditional writ of habeas corpus.

## I. BACKGROUND

### A. State-Court Procedural History

On August 5, 2003, a grand jury in Shelby County, Tennessee, returned three indictments charging Means and Derrick Burroughs with aggravated robbery. (ECF No. 16-1 at PageID 124-34.) Case Number 03-05190 contained two counts charging Means and Burroughs with the aggravated robbery of Robert Hollie on December 22, 2002. (Id. at PageID 124-26.) Case Number 03-05192 contained four counts charging Means and Burroughs with the aggravated robbery of Robert Hill and Sarah Hill on December 22, 2002. (Id. at PageID 127-31.) Case Number 03-05194 contained two counts charging Means and Burroughs with the aggravated robbery of Carolyn Fredrickson on December 18, 2002. (Id. at PageID 132-34.)

A jury trial on the charges against Means commenced on May 3, 2004, and, on May 4, 2004, the jury returned a verdict finding Means guilty on all counts. (Trial Tr. 128-29, ECF No. 16-4, at PageID 418-19.) At a sentencing hearing on June 3, 2004, Means was sentenced as a Range I standard offender to an effective term of imprisonment of eighteen years.[2] (Sentencing Hr'g Tr. 8:25-10:10, ECF No. 16-5, at PageID 434-36.) The Tennessee Court of Criminal

_____

[2] Means was sentenced to nine years on each indictment. The trial court ordered the sentences in Case Numbers 03-05190 and 03-05194 to run concurrently to each other but consecutive to the sentence in Case Number 03-05192. (Sentencing Hr'g Tr. 10:1-10, ECF No. 16-5, at PageID 436.)

Appeals affirmed. <u>State v. Means</u>, No. W2004-01446-CCA-R3-CD, 2005 WL 1323260 (Tenn. Crim. App. June 3, 2005), <u>appeal denied</u> (Tenn. Dec. 5, 2005).

On or about March 7, 2006, Means filed a pro se petition in the Shelby County Criminal Court pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -122. (ECF No. 16-6 at PageID 456-64.) On May 3, 2006, Counsel was appointed to represent Means. (<u>Id.</u> at PageID 465.) Amendments to the petition were filed on November 21, 2006 (<u>id.</u> at PageID 466-67), April 20, 2007 (<u>id.</u> at PageID 468-70), and September 19, 2007 (<u>id.</u> at PageID 471-74). The post-conviction court held a hearing on the petition on February 19, 2008 (Post-Conviction Relief Hr'g Tr., ECF No. 16-8),[3] and denied relief on May 1, 2008 (ECF No. 16-6 at PageID 476-84). The Tennessee Court of Criminal Appeals affirmed. <u>Means v. State</u>, No. W2008-01039-CCA-R3-PC, 2010 WL 2490771 (Tenn. Crim. App. June 21, 2010), <u>appeal denied</u> (Tenn. Oct. 20, 2010).

The Tennessee Court of Criminal Appeals summarized the evidence introduced at trial:

> All four robbery victims were robbed at gunpoint in the driveways or carports of their Memphis homes during the Christmas holiday shopping season of December 2002. At the defendant's May 3, 2004, trial, the first robbery victim, sixty-three-year-old Carolyn Fredrickson, testified she was loading three dogs into her car at about 3:00 p.m. on December 18, 2002, when she noticed a burgundy, square-looking vehicle with a drive-out tag in

---

[3] There was apparently an earlier post-conviction hearing at which Means testified, but that transcript is not included in the record. (<u>See</u> Post-Conviction Relief Hr'g Tr. 1, 4, ECF No. 16-8, at PageID 507, 510.)

the rear window pull up on the street outside her home and a young man run across her yard. Assuming he was coming to sell her something, she continued placing the dogs into her car. When she raised up, the young man was holding a silver handgun against her neck and demanding her purse. After she handed it to him, he ran back to the waiting vehicle and got in the passenger side and the driver sped away. Approximately one month later, Fredrickson identified the defendant as the armed robber by picking his photograph out of a photographic array at the police department. She also made a positive courtroom identification of the defendant as her assailant and identified a photograph of the defendant's vehicle as similar in appearance to the getaway vehicle used in the robbery.

The second and third victims, husband and wife Robert and Sara Alice Hill, were robbed in their open garage at approximately 2:30 p .m. on December 22, 2002. At trial, eighty-two-year-old Robert Hill testified he and his wife were unloading Christmas packages from the trunk of their vehicle when a man came up behind him, placed a shiny automatic pistol against his face, and demanded his wallet, his wife's purse, and their car keys. Hill said the gunman threatened to shoot them if they did not comply with his demands. He testified that after they had handed the items over, the man threw the car keys down at the gate and ran to a waiting car, which was driven by another man. Hill described the getaway vehicle as a maroon or dark red Mercury or Chevrolet with a drive-out tag in the rear window, and he agreed it was very similar in appearance to the photograph of the defendant's vehicle.

Later that same afternoon, Robert Hollie was robbed in the carport of his home by a young man with a silver pistol who fled in a similar-looking vehicle. Hollie, who was sixty-four years old at the time of trial, testified he was unlocking the door to his house at approximately 4:30 p.m. when a young man ran up, pointed a silver gun at his head, and shouted, "Get in the house or I'll shoot." Knowing that his wife was inside the house, Hollie began grappling with the gunman for the weapon. As he struggled, he ended up on his knees but still managed to retain his grip on the weapon and the gunman. At that point, however, a second man ran up and kicked him in the face and shoulder, breaking his nose. Hollie testified that when the second man began to kick him a third time,

he grabbed the second man's leg and the gunman was able to break away. He said the gunman took his wallet, and both men fled to a burgundy vehicle with a drive-out tag in the rear window and a luggage rack on the trunk. Hollie was unable to identify the robbers but, like Hill, agreed that the getaway vehicle was similar in appearance to the photograph of the defendant's vehicle.

On January 15, 2003, police officers were dispatched to a Memphis check cashing business in response to a report that someone was attempting to cash a stolen check. When they arrived, they found the defendant in the driver's seat of his maroon Oldsmobile Cutlass, which had a drive-out tag in the rear window and a luggage rack on the trunk. In the subsequent search of the defendant's vehicle, the officers discovered a chrome nine-millimeter, semi-automatic weapon hidden beneath the carpet behind the vehicle's brake pedal. The defendant initially denied any involvement in the crimes but eventually issued three statements in which he detailed his participation in the robberies.

Means, 2005 WL 1323260, at *1-2.

**B.    Procedural History of Means' § 2254 Petition**

On July 29, 2011, Means filed his § 2254 Petition, accompanied by a Motion for Leave to Proceed in forma pauperis. (ECF Nos. 1, 2.) In an Order issued on August 2, 2011, the Court granted leave to proceed in forma pauperis. (ECF No. 3.) On November 18, 2011, the Court ordered Respondent to file the state-court record and a response to the § 2254 Petition. (ECF No. 6.)

On January 10, 2012, Respondent filed a Motion to Dismiss the § 2254 Petition as time barred, supported by a legal memorandum and portions of the state-court record. (ECF No. 11.) On February 2, 2012, Petitioner filed a Response in Opposition to Respondent's Motion to Dismiss (ECF No. 12) and a Motion to Strike (ECF No. 14).

In an Order issued on June 20, 2012, the Court denied the Motion to Strike, denied the Motion to Dismiss, and directed Respondent to file the state-court record and a response to the § 2254 Petition. (ECF No. 13.)

Respondent filed his Answer to the § 2254 Petition and the state-court record on July 13, 2012. (ECF Nos. 15, 16.) On September 11, 2012, Petitioner filed his Traverse and Response to Respondent's Answer ("Reply"). (ECF No. 18.)[4]

Also on September 11, 2012, Petitioner filed a Motion for Summary Judgment. (ECF No. 19.) Respondent has not responded to that Motion, and the time for a response has expired.

On May 16, 2013, Respondent filed a Motion to Construe Answer as Motion for Summary Judgment. (ECF No. 22.) It does not appear that Petitioner responded to this Motion. Instead, on June 14, 2013, Petitioner filed another Traverse and Response to Respondent's Answer (ECF No. 24), which appears to be identical to the Reply filed on September 11, 2012. Also on June 14, 2013, Petitioner filed an Additional Response to Respondent's Answer to Petition, which the Court CONSTRUES as a Supplemental Reply. (ECF No. 23.)[5]

---

[4]    Petitioner's Reply was due thirty days after the filing of the Answer. (See ECF No. 13 at 8.) On August 3, 2012, Petitioner filed a Notice of Traverse and Response (ECF No. 17), which stated that he intended to Reply to the Answer. Although Petitioner did not explicitly seek an extension of time in which to Reply, the Court will exercise its discretion to treat the Reply as timely.

[5]    Leave to file a Supplemental Reply is GRANTED.

On June 14, 2013, Petitioner filed another Motion for Summary Judgment. (ECF No. 25.) This filing appears to be identical to the Motion for Summary Judgment Petitioner filed on September 11, 2012. Respondent did not respond to the Motion.

The Motions for Summary Judgment filed by the parties are neither necessary nor helpful in resolving the issues presented because neither party has responded to the Motions filed by the other. Respondent asks the Court to treat his Answer as a motion for summary judgment but does not explain why or how the Court should do so. Moreover, Respondent's Motion does not adequately state why summary judgment is appropriate in this case, how the Court is to apply the summary-judgment standard if Respondent is excused from submitting a statement of undisputed facts, and how the summary-judgment standard differs from the review conducted by the Court under Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts upon receipt of the Answer, Reply, and state-court record. Accordingly, the various Motions for Summary Judgment (ECF Nos. 19, 22, 25) are DENIED.

## II. PETITIONER'S FEDERAL HABEAS CLAIMS

In his § 2254 Petition, Means raises the following issues: (1) whether he was denied his Sixth Amendment right to a jury trial (ECF No. 1 at 5-12); and (2) whether his attorney rendered ineffective assistance, in violation of the Sixth Amendment (id. at 12-20).

## III. THE LEGAL STANDARD

The statutory authority for federal courts to grant habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254. A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### A.    Waiver and Procedural Default

Twenty-eight U.S.C. § 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state-court remedies. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The petitioner must "fairly present"[6] each claim to all levels of state court review, up to and including the state's highest court on discretionary review, Baldwin v. Reese, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme-court review as an available state remedy, O'Sullivan v. Boerckel, 526 U.S. 838, 847-48 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court in order to "be deemed to have exhausted all available state remedies." Adams v. Holland, 330 F.3d

---

[6]    For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. Gray v. Netherland, 518 U.S. 152, 163 (1996).

398, 402 (6th Cir. 2003); see Smith v. Morgan, 371 F. App'x 575, 579 (6th Cir. 2010) (per curiam) (stating that the Adams holding promotes comity by requiring that state courts have the first opportunity to review and evaluate claims and by mandating that federal courts "respect the duly-promulgated rule of the Tennessee Supreme Court that recognizes the law and policy-making function of that court and the court's desire not to be entangled in the business of simple error correction").

The procedural-default doctrine is integral to the exhaustion requirement. See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000) (noting the interplay between the exhaustion rule and the procedural-default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner is ordinarily barred from seeking federal habeas review. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991) (stating that a federal habeas court will not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). If a claim has never been presented to the state courts, but a state-court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), the claim is technically exhausted but procedurally barred. See Coleman, 501 U.S. at 732; Hicks v. Straub,

377 F.3d 538, 551 (6th Cir. 2004) (noting that the procedural-default doctrine prevents circumvention of the exhaustion doctrine).

Under either scenario, a petitioner must show "cause" to excuse his failure to present the claim fairly and "actual prejudice" stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. The latter showing requires a petitioner to establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995); <u>see also</u> <u>House v. Bell</u>, 547 U.S. 518, 536-39 (2006).

## B. Merits Review

Section 2254(d) establishes the standard for addressing claims that have been adjudicated in state courts on the merits:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." Cullen, 131 S. Ct. at 1398 (citations omitted) (internal quotation marks omitted).[7]

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen, 131 S. Ct. at 1399. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).[8] An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." Id. The state court's application of clearly established federal law must be "objectively unreasonable." Id. at 409. The writ may not issue merely because the habeas court, in its independent judgment, determines that the state-court decision applied clearly

_____

[7]    The AEDPA standard creates "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

[8]    The "contrary to" standard does not require citation of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam); see Mitchell v. Esparza, 540 U.S. 12, 16 (2003); Treesh v. Bagley, 612 F.3d 424, 429 (6th Cir. 2010).

established federal law erroneously or incorrectly. <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1862 (2010); <u>Williams</u>, 529 U.S. at 411.

There is little case law addressing the standard in § 2254(d)(2) regarding a decision based on "an unreasonable determination of facts." However, in <u>Wood v. Allen</u>, 130 S. Ct. 841, 849 (2010), the Supreme Court stated that a state-court factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. In <u>Rice v. Collins</u>, 546 U.S. 333, 341-42 (2006), the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination."[9]

"Notwithstanding the presumption of correctness, the Supreme Court has explained that the standard of § 2254(d)(2) is 'demanding but not insatiable.'" <u>Harris v. Haeberlin</u>, 526 F.3d 903, 910 (6th Cir. 2008) (quoting <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005)). "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). A state-court adjudication will not be overturned on factual grounds unless it was objectively

---

[9]    In <u>Wood</u>, 120 S. Ct. at 845, 848, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was "unreasonable," or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence. The Court ultimately found it unnecessary to reach that issue. <u>Id.</u> at 849, 851. In <u>Rice</u>, 546 U.S. at 339, the Court recognized that it is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable.

unreasonable in light of the evidence presented in the state court proceeding. See Ayers v. Hudson, 623 F.3d 301, 308 (6th Cir. 2010).

## IV.  ANALYSIS OF PETITIONER'S CLAIMS

### A.    The Alleged Violation of Petitioner's Sixth Amendment Right to a Jury Trial ("Claim 1")

In his first claim for relief, Means asserts that his sentence was imposed in violation of his Sixth Amendment right to a jury trial. (ECF No. 1 at 5-12.) Specifically, Means complains that the trial judge increased his sentence in reliance on facts that were not found by the jury and proven beyond a reasonable doubt, in violation of Blakely v. Washington, 542 U.S. 296 (2004).

Means raised this issue on direct appeal (ECF No. 16-10 at 6-7), and the Tennessee Court of Criminal Appeals rejected it on the merits, stating as follows:

> The defendant contends that the trial court erred in sentencing by applying enhancement factors to increase his sentences beyond the minimum in his range and by ordering that two of his sentences be served consecutively. When an accused challenges either the length or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the

accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); <u>State v. Taylor</u>, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). As the party challenging the sentences, the burden falls on the defendant to show that the trial court erred in its sentencing determinations.

. . . .

As a Range I offender convicted of a Class B felony, the defendant was subject to a sentence ranging from eight to twelve years. *See* Tenn. Code Ann. § 40-35-112(a)(2) (2003). Our sentencing statute provides that for a Class B felony, a trial court starts at the minimum sentence in the range, increases the sentence within the range based upon the existence of any applicable enhancement factors, and then reduces the sentence as appropriate based on applicable mitigating factors. Tenn. Code Ann. § 40-35-210(c), (d), (e) (2003). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Cmts.; <u>State v. Moss</u>, 727 S.W.2d 229, 237 (Tenn. 1986).

The trial court applied the following four enhancement factors to the crimes:

(2) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(3) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;

. . . .

(5) A victim of the offense was particularly vulnerable because of age or physical or mental disability . . .

. . . .

14

(21) The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult[.]

Tenn. Code Ann. § 40-35-114(2), (3), (5), (21) (2003). Finding no relevant mitigating factors, the trial court sentenced the defendant to nine years for each offense, one year beyond the statutory minimum for his range.

On appeal, the defendant challenges neither the facts upon which the trial court relied for its application of the above enhancement factors, nor the trial court's failure to apply any factors in mitigation. Instead, he contends that our state's sentencing procedure, by which the trial court rather than the jury is allowed to find the existence of enhancement factors used to increase a defendant's sentence, violates his Sixth Amendment right to trial by jury, as set forth in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). However, in State v. Gomez, --- S.W.3d ----, ----, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at ----20-22 (Tenn. 2005), which was released after the briefs were filed in this case, our supreme court concluded that Tennessee's sentencing scheme does not violate a defendant's Sixth Amendment right to trial by jury because of the discretion it affords the trial court "to select an appropriate sentence anywhere within the range." Therefore, under Gomez, there was no error in the trial court's having found the existence of the enhancement factors used to increase the defendant's sentence beyond the presumptive minimum in his range. This issue is without merit.

State v. Means, 2005 WL 1323260, at *2-3.[10]

In his Answer, Respondent concedes that the decision of the Tennessee Court of Criminal Appeals on this issue is contrary to the Supreme Court's decision in Blakely. (ECF No. 15 at 9.) Because a discussion of the appropriate remedy requires an understanding of

---

[10]   On direct appeal, Means also challenged the trial court's decision to make the sentence partially consecutive. (ECF No. 16-10 at 8-10.) That issue is not presented in the instant case.

the Tennessee sentencing scheme as it existed at the time of Means'
sentencing in 2004 and the relevant law, the Court will state the
relevant legal principles, as taken from the United States Court of
Appeal's for the Sixth Circuit's comprehensive discussion in <u>Lovins
v. Parker</u>, 712 F.3d 283 (6th Cir. 2013).[11]

In the instant case, as in <u>Lovins</u>, the trial judge followed
the Tennessee sentencing rules then set forth in Tennessee's
Criminal Sentencing Reform Act of 1989. <u>See</u> Tenn. Code Ann. § 40-
35-210.[12] Section 40-35-210(c) instructed the court first to
determine the appropriate range of the sentence, stating that
"[t]he presumptive sentence for a Class B, C, D and E felony shall
be the minimum sentence in the range if there are no enhancement
or mitigating factors."[13] "Should there be enhancement but no
mitigating factors for a Class B, C, D or E felony, then the court
may set the sentence above the minimum in that range but still
within the range." Tenn. Code Ann. § 40-35-210(d).

The Sixth Circuit Court of Appeals explained the relevance of

---

[11]    The instant case differs from <u>Lovins</u> in several important respects.
Unlike <u>Lovins</u>, there is no issue of procedural default or retroactivity in the
instant case. As will be discussed infra, the presumptive sentence also differs
from that in <u>Lovins</u>.

[12]    Section 40-35-210 was amended in 2005. <u>See</u> Act of June 7, 2005, ch.
353, 2005 Tenn. Pub. Acts 788. References that follow are to the version of the
statute prior to this amendment.

[13]    Aggravated robbery is a Class B felony. Tenn. Code Ann. § 39-13-
402(b). By contrast, <u>Lovins</u> involved a conviction for second degree murder, which
is a Class A felony. Tenn. Code Ann. § 39-13-210(c). Section 40-35-210(c)
provided that "[t]he presumptive sentence for a Class A felony shall be the mid-
point of the range if there are no enhancement or mitigating factors."

<u>Blakely</u> to Tennessee's sentencing law:

> At this point, a short primer on <u>Blakely</u> is necessary to understand the parties' arguments. The relevant United States Supreme Court precedent begins with <u>Apprendi v. New Jersey</u>, which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed.2d 435 (2000). Four years later, in <u>Blakely</u>, the Court clarified that the definition of "'statutory maximum' for <u>Apprendi</u> purposes is not the high-end that a sentence may not exceed, but rather the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Blakely</u>, 542 U.S. at 303, 124 S. Ct. 2531. A year later, the Court clarified that the <u>Apprendi</u>/<u>Blakely</u> rule applies to the federal sentencing guidelines. <u>United States v. Booker</u>, 543 U.S. 220, 226–27, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

> In its first encounter with <u>Blakely</u>, the Tennessee Supreme Court determined that the rule did not necessarily invalidate § 40-35-210. <u>State v. Gomez</u>, 163 S.W.3d 632, 661 (Tenn. 2005) ("<u>Gomez I</u>"). The defendants in <u>Gomez I</u>, however, filed a petition for certiorari to the United States Supreme Court. On January 27, 2007, the Court invalidated California's sentencing procedure, which was virtually identical to Tennessee's. <u>Cunningham v. California</u>, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007). On February 20, the Supreme Court vacated <u>Gomez I</u> and remanded the case to the Tennessee Supreme Court for consideration in light of <u>Cunningham</u>. <u>Gomez v. Tennessee</u>, 549 U.S. 1190, 127 S. Ct. 1209, 167 L. Ed. 2d 36 (2007). On remand, the Tennessee Supreme Court acknowledged that § 40-35-210 "violated the Sixth Amendment as interpreted by the Supreme Court in <u>Apprendi</u>, and <u>Cunningham</u>." <u>State v. Gomez</u>, 239 S.W.3d 733, 740 (Tenn. 2007) ("<u>Gomez II</u>").

<u>Lovins</u>, 712 F.3d at 289-90.

Although Means was sentenced less than a month before the issuance of the decision in <u>Blakely</u>, there is no dispute that the decision applies to the instant case as his sentence was not final

until after <u>Blakely</u> was issued. <u>See</u> <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987). The authorized sentence for a Class B felony is "not less than eight (8) nor more than thirty (30) years." Tenn. Code Ann. § 40-35-111(b)(2). The parties stipulated that Means was a Range I standard offender (Sentencing Hr'g Tr. 3, 8, ECF No. 16-5, at PageID 429, 434), and, therefore, the sentencing range was "not less than eight (8) nor more than twelve (12) years" for each aggravated robbery, Tenn. Code Ann. § 40-30-112(a)(2). The sentencing judge was required to start at the minimum sentence for a Class B felony, eight (8) years, and to adjust the sentence upward in the event it found any aggravating circumstances. Tenn. Code Ann. §§ 40-35-210(c)-(d). In the instant case, the trial judge made the following findings regarding enhancement factors:

> The Court finds from the proof in this case that, of course, it was agreed upon and I think uncontriverted [sic] to a range I standard offender. The Court does find that he does have a previous history of criminal convictions, or criminal behavior in addition to those necessary to establish the appropriate range. He has another conviction, of course, but he's obviously in range I, which would be the minimum range.

> But, of course, the proof was that Mr. Means was the, in at least a couple of these incidences, the person who was involved in — or had the gun and was the one who actually pointed the gun at the people. And in other cases where the other person was the get away drive [sic].

> But anyway, the Court finds that certainly in some of these offenses he was certainly the leader in the offenses.

> And the proof was, and by what the Court observed, there were, obviously, elderly people who the defendant

picked out in order to commit these crimes against. And, of course, the defendant has been adjudicated a delinquent in another offense in Juvenile Court before he was an adult.

So the Court finds these factors to be involved in this case. The Court is of the opinion that the appropriate sentence in each of these cases would be a sentence in each case of nine years in the state penitentiary and a fine of one-thousand dollars as to each of these offenses.

And the Court finds that the defendant, of course, has committed these numerous robberies and not only that, indicating because of the age of the victim and that he took advantage of them, and of course, that was part of the enhancement factors, but that he went out and committed a series of robberies on separate dates. It was just a dangerous, dangerous type of situation.

Of course, obviously, the offenses themselves were offenses of violence with the use of guns and that I think that there would be a necessity to protect society from the defendant at this point.

The Court finds, based on all of the criteria that the Court feels — the two that would be appropriate situation here is that the cases in indictment number 03-05194 and 03-05190, run those concurrent. And the cases in 03-05192 will run concurrent with each other, but consecutive to the other two indictments for an effective sentence of eighteen years and a fine of four-thousand dollars.

(Sentencing Hr'g Tr. 8-9, ECF No. 16-5, at PageID 434-35; see also ECF No. 16-1 at PageID 152-56.)

The court's findings that Means "had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40-35-114(2), and that he "was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony

if committed by an adult," Tenn. Code Ann. § 40-35-114(21), do not offend the Sixth Amendment. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); State v. Gomez, 239 S.W.3d 733, 740 (Tenn. 2007) ("Gomez II") ("The trial court's application of the enhancement factor for a previous history of criminal convictions does not offend the Sixth Amendment."). The sentencing court's application of the other two enhancement factors — that Means "was a leader in the commission of an offense involving two (2) or more criminal actors," Tenn. Code Ann. § 40-35-114(3), and that "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability," Tenn. Code Ann. § 40-35-114(5) — is contrary to Blakely. Under Tennessee law at the time of Means' sentencing, the presumptive sentence of eight years was also the relevant statutory maximum. See Gomez II, 239 S.W.3d at 740-41; see also Cunningham v. California, 549 U.S. 270, 288 (2007). Accordingly, these two enhancement factors should have been submitted to a jury. See Lovins, 712 F.3d at 302; Gomez II, 239 S.W.3d at 740 ("Applying Cunningham, we conclude that the Reform Act failed to satisfy the Sixth Amendment insofar as it allowed a presumptive sentence to be enhanced based on judicially determined facts. That is, to the extent the Reform Act permitted enhancement

based on judicially determined facts other than the fact of a prior conviction, it violated the Sixth Amendment as interpreted by the Supreme Court in _Apprendi_, _Blakely_, and _Cunningham_." (footnote omitted)).

It is next necessary to consider the remedy for the _Blakely_ violation identified by Means. The Sixth Circuit has explained that

> [h]armless error . . . here is a federal-law question. In determining the proper remedy for a _Blakely_ error, we ordinarily consider whether the error was harmless. _See_ _Villagarcia v. Warden, Noble Corr. Inst._, 599 F.3d 529, 536 (6th Cir. 2010). In _Villagarcia_, we adopted the "more 'state-friendly standard'" of _Brecht v. Abrahamson_, 507 U.S. 619, 631, 113 S. Ct. 1710, 123 L. Ed.2d 353 (1993), for determining harmless error in cases "involving collateral review of state-court decisions." _Villagarcia_, 599 F.3d at 536–37 (citing _Hereford v. Warren_, 536 F.3d 523, 532–33 (6th Cir. 2008)). Under that standard, "an error is considered not harmless when 'the matter is so evenly balanced that the habeas court has grave doubt as to the harmlessness of the error.'" _Id._ at 537 (quoting _Hereford_, 536 F.3d at 533).

_Lovins_, 712 F.3d at 303.

In the instant case, Respondent argues that the _Blakely_ error was harmless. (ECF No. 15 at 9-10.) Specifically, Respondent argues that

> [t]here is no cause for grave doubt in this case. Even if the trial court's sentencing decision had comported with _Blakely_, it would still have retained as an enhancement factor the fact that the Petitioner had "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." _See_ _Booker_, 543 U.S. at 244 (noting that prior convictions may constitutionally be used to enhance a defendant's sentence). That enhancement factor, at the time codified in Tenn. Code Ann. § 40-35-114(2), is more than sufficient to support the trial court's decision to raise the Petitioner's sentence from eight to nine years,

especially within a range that allowed for a maximum sentence of twelve years. This case is thus distinguishable from <u>Villagarcia</u>, in which the Sixth Circuit held that a <u>Blakely</u>-offending sentencing error was not harmless, because in that case the sentencing court relied solely on portions of Ohio's sentencing code later severed as unconstitutional. 599 F.3d 529 at 537. Here, the sentencing court had an independent and constitutional basis on which to order the small increase in the Petitioner's sentence. This error is harmless, and Ground One should be dismissed.

(<u>Id.</u> at 10.)

Respondent's analysis is not persuasive. In <u>Villagarcia v. Warden, Noble Corr. Inst.</u>, the Sixth Circuit explained that, in cases involving direct review of federal sentences under the "more lenient harmless error standard," remand is required "unless we are certain that any such error was harmless — i.e., any such error did not affect the district court's selection of the sentence imposed." 599 F.3d 529, 537 n.7 (6th Cir. 2010) (citation omitted) (internal quotation marks omitted). Furthermore, the Sixth Circuit rejected the State's argument that the sentencing judge might have imposed the same sentence the prisoner had received under the unconstitutional sentencing scheme. <u>Id.</u> at 537-39. The Sixth Circuit concluded that "we simply cannot know whether the sentencing judge would accord the relevant factors the same weight when reassessing the matter outside the dictates of the severed provisions." <u>Id.</u> at 539.

In <u>Lovins</u>, the Sixth Circuit also did not find the constitutional error to be harmless:

The Tennessee trial judge enhanced Lovins's sentence on the basis of the judge's finding of four aggravating factors: that Lovins (1) had a history of criminal convictions or behavior, (2) had a history of unwillingness to comply with conditions of release, (3) possessed a firearm during the commission of his offense, and (4) showed no hesitation about committing a crime with a high risk to human life. Of these four, only the existence of prior criminal convictions and the possession of the firearm could possibly be considered to be facts found by a jury beyond a reasonable doubt. And, with regard to the criminal-history factor, the judge noted that it was "not a lengthy criminal history," suggesting that this factor was not important in determining the sentence.

A finding that the error was not harmless in this case is supported by <u>Villagarcia</u>, in which we recognized that the sentencing court could end up exercising *more* discretion on remand than it had the first time around. Nonetheless, we still concluded there that "we simply cannot know whether the sentencing judge would accord the relevant factors the same weight when reassessing the matter outside the dictates of the severed provisions." 599 F.3d at 539. Such a finding is also supported by <u>Gomez II</u>, in which the Tennessee Supreme Court reviewed the judicial factfinding of only two factors — a previous history of criminal convictions or behavior and a finding that Gomez had been a "leader" in the commission of the offense. 239 S.W.3d at 736. On application of the plain error standard, the Tennessee Supreme Court found that this judicial factfinding had "adversely affected" a substantial right of the accused, <u>id.</u> at 741, and that consideration of the error was "necessary to do substantial justice," <u>id.</u> at 742. In sum, even had the State not waived the argument in Lovins's case, we would conclude that the <u>Blakely</u> sentencing error was not harmless.

712 F.3d at 303-04.

Likewise, in <u>Gomez II</u>, the Tennessee Supreme Court vacated the prisoner's sentence and remanded the case for a new sentencing hearing even though the sentencing court relied in part on the

23

prisoner's prior criminal history, a permissible enhancement
factor:

> The trial court accorded "great weight" to the
> Defendants' prior criminal histories. However, the trial
> court also relied upon each Defendant's being "a leader
> in the commission of an offense involving two (2) or more
> criminal actors," Tenn. Code Ann. § 40-35-114(2) (Supp.
> 2001), while imposing sentence for all of the Defendants'
> convictions, and upon each Defendant having "possessed or
> employed a firearm, explosive device or other deadly
> weapon during the commission of the offense," id. at (9),
> while imposing sentence for the facilitation of felony
> murder offense. The trial court's application of these
> two enhancement factors depended on the type of judicial
> fact-finding prohibited by Apprendi.

> That the trial court gave "great weight" to the
> Defendants' prior criminal histories does not necessarily
> render irrelevant its application of enhancement factors
> (2) and (9). And while the Reform Act allows this Court
> on appeal of a sentence to "[a]ffirm, reduce, vacate
> or set aside the sentence imposed," Tenn. Code Ann.
> § 40-35-401(c)(2) (2006), the record in this case as to
> the Defendants' criminal histories is not sufficiently
> well-developed for us to determine the proper sentences
> based on this enhancement factor alone. Therefore,
> because the trial court's reliance upon enhancement
> factors (2) and (9) was constitutionally inappropriate,
> we conclude that granting the Defendants relief is
> necessary to do substantial justice in this case. We
> therefore vacate the Defendants' sentences and remand to
> the trial court for a resentencing hearing at which the
> trial court will have an opportunity both to determine
> the full scope of the Defendants' criminal histories and
> to consider whether imposition of the maximum sentence on
> all convictions is appropriate. Our holding does not,
> however, affect the trial court's determinations
> regarding manner of service or the imposition of
> consecutive sentences.

239 S.W.3d at 742-43.

The sentencing judge in the instant case increased Means'
sentence for each armed robbery from the presumptive minimum of

eight years to nine years on the basis of four enhancement factors, two of which have been found to be unconstitutional under <u>Blakely</u>. The transcript provides no insight into how the sentencing judge weighed the various factors, although he seems to have placed somewhat greater emphasis on the targeting of elderly victims. (Sentencing Hr'g Tr. 8-9, ECF No. 16-5, at PageID 434-35.) Respondent suggests that the sentencing judge would certainly have chosen to impose the same sentence in the absence of the prohibited enhancements because he chose to enhance Means' presumptive sentence by only one year when he had discretion to increase his sentence by four years. (<u>See</u> ECF No. 15 at 10.) This argument is entirely speculative. Accordingly, the Court can not be certain that the constitutional error was harmless in the instant case.

Therefore, Means' § 2254 Petition is GRANTED as to Claim 1. The State must either reduce Means' sentence for each count from nine years to eight years or must afford Means a new sentencing hearing within one hundred eighty (180) days from the date of entry of this Order. The Court's holding does not affect the trial court's determination regarding the imposition of consecutive sentences.

### B. Ineffective Assistance of Counsel ("Claim 2")

In his second claim for relief, Means argues that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment. (ECF No. 1 at 12-20.) Specifically, Means complains that

his attorney failed to investigate and present mitigating evidence at the sentencing hearing, including that

> Petitioner (1) was just eighteen (18) yrs. of age when he was arrested for a previous and the instant conviction, (2) no juvenile record was located, (3) the presentence reported that he had graduated from high school and attended a community college for a short period of time, (4) was previously employed by Tele-Performance, Taco Bell, Hewlett Packard, Mrs. Winners, and office [sic] Max and (5) he had significant community contacts.

(Id. at 13.)

Respondent contends that Petitioner failed to exhaust this issue in state court and, because no further opportunity exists to do so, Claim 2 is barred by procedural default. (ECF No. 15 at 10-11.)

Although Means raised the issue in his initial pro se post-conviction petition (ECF No. 16 at PageID 464), in one of the amendments filed by counsel (ECF No. 16-6 at PageID 472-73), and at the post-conviction hearing (Post-Conviction Relief Hr'g Tr. 32-33, ECF No. 16-8, at PageID 538-39), the issue was not presented in Petitioner's brief to the Tennessee Court of Criminal Appeals on the post-conviction appeal. (See ECF No. 16-12 at PageID 629.) Therefore, Means has failed properly to exhaust Claim 2. See Cornish v. Tennessee, No. 87-5455, 1998 WL 101188, at *2 (6th Cir. Oct. 3, 1988) (per curiam). Because there is no longer any means of presenting this issue to the state courts, Claim 2 would ordinarily be barred by procedural default.

In his Reply, Means argues that his procedural default should be excused on the basis of the Supreme Court's decision in <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1320 (2012). (<u>See</u> ECF No. 18 at 7-9.) "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." <u>Coleman</u>, 501 U.S. at 752 (citations omitted); <u>see also</u> 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Accordingly, until recently, a habeas petitioner could not obtain relief on a claim of ineffective assistance of post-conviction counsel. In 2012, the Supreme Court issued its decision in <u>Martinez</u>, which recognized a narrow exception to the rule stated in <u>Coleman</u> "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding . . . ." 132 S. Ct. at 1320. In such cases, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Id.</u> The Supreme Court also emphasized that "[t]he rule of <u>Coleman</u> governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in

other proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . ." Id.

Martinez arose under an Arizona law that did not permit ineffective-assistance claims to be raised on direct appeal. "[I]n Tennessee, there is no prohibition against litigation of ineffective counsel claims on direct appeal, as opposed to collateral proceedings." Leberry v. Howerton, No. 3:10-00624, 2012 WL 2999775, at *1 (M.D. Tenn. July 23, 2012) (citation omitted) (internal quotation marks omitted). Although ineffective-assistance claims are usually raised in post-conviction proceedings in Tennessee, the decision in Leberry declined to extend the reasoning of Martinez, explaining that "the equities of concern in Martinez do not extend to situations where, as here, a petitioner is represented in his post conviction proceeding by yet another attorney who is free to make the ineffectiveness of trial counsel claim." Id. at *2.

In its subsequent decision in Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013), the Supreme Court extended its holding in Martinez to states in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." The decision in Trevino would appear to be applicable to

habeas petitioners in Tennessee, where issues of ineffective assistance of trial counsel are ordinarily addressed in post-conviction proceedings. "But Trevino still requires prisoners to show that their underlying ineffective assistance-at-trial claim is substantial and that their initial habeas attorney was ineffective." Baze v. White, No. 01-31-ART, 2013 WL 2422863, at *4 (E.D. Ky. June 3, 2013).

The decisions in Martinez and Trevino do not provide "cause" for Means' procedural default. Post-conviction counsel litigated a claim that trial counsel was ineffective in failing to address mitigating evidence at the sentencing hearing but chose not to include that issue in the post-conviction appeal. See supra pp. 26-27. The holding in Martinez does not encompass claims that appellate counsel were ineffective. 132 S. Ct. at 1319 ("Coleman held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial review collateral proceedings for claims of ineffective assistance at trial."); see also Hodges v. Colson, 711 F.3d 589, 603 (6th Cir. 2013) (stating that under Martinez, "ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel"); United States ex rel. Fleming v. Chandler, No. 12 C 5190, 2013 WL 589559, at *5 (N.D. Ill. Feb. 14, 2013) (Martinez inapplicable to procedural default during a post-

conviction appeal). Accordingly, the decisions in <u>Martinez</u> and <u>Trevino</u> do not excuse Means' procedural default.

Therefore, Means' § 2254 Petition is DENIED as to Claim 2.

**V. CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the § 2254 Petition and ISSUES a conditional writ of habeas corpus on Claim 1. The State must either reduce Means' sentence for each count from nine years to eight years or must afford Means a new sentencing hearing within one hundred eighty (180) days from the date of the entry of this Order. The Court's holding does not affect the trial court's determination regarding the imposition of consecutive sentences.

**SO ORDERED** this 5th day of August, 2013.

s/ Jon P. McCalla

JON P. McCALLA
CHIEF JUDGE, U.S. DISTRICT COURT